Filed 1/14/25  In re A.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083658 |
| Plaintiff and Respondent, | (Super.Ct.No. J299046) |
| v. | OPINION |
| S.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Michelle D. Pena, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant S.H. (Mother) appeals from a finding made at the 12-month review hearing held pursuant to Welfare and Institutions Code section 366.21.[1] At the 12-month review hearing, Mother contested plaintiff and respondent San Bernardino County Children and Family Services (CFS) had provided reasonable services. Mother insisted that she had not been afforded visitation with A.L. (born Feb. 2022; Minor) for three months. At the hearing, the juvenile court made a finding that CFS had provided reasonable services and continued the hearing. Mother filed this appeal from the finding at the 12-month review hearing contending the juvenile court erred by finding that she was provided reasonable services. CFS claims that the appeal should be dismissed.

## FACTUAL AND PROCEDURAL HISTORY

### A. DETENTION[2]

The dependency case was initially handled by the Los Angeles County Department of Children's Services (LADCS). On January 31, 2023, the LADCS received a report of domestic violence between Mother and C.L., Minor's father (Father; collectively, Parents). It was reported that on January 20, 2023, Father assaulted Mother by striking her in the face more than once. Mother had pictures of the bruises she received. The assault was witnessed by one of Minor's siblings. Mother had not

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] At the time that the dependency petition was filed, Minor's half siblings, S.F., A.M., and E.M. (Siblings), were also named. They are not part of the instant appeal.

contacted the police for fear of retaliation by Father. It was reported that Father had hurt Mother in the past and that he was using cocaine.

Several unannounced visits were made to Mother's apartment in February 2023 by social workers from the LADCS. The home was unkempt and filthy. Siblings were frequently absent from school and appeared disheveled. Mother acknowledged the last domestic violence incident between her and Father was in January 2023. She described the incident to one of the social workers. Mother was trying to move out of the apartment but did not have enough money to move. Mother believed that Father was abusing cocaine. Mother reported that Minor oftentimes stayed with paternal grandmother, M.L. (PGM). Mother claimed she did not have a phone number or address for PGM. PGM only spoke Spanish. A further anonymous report was made to the LADCS that Mother physically and verbally abused Minor and Siblings. It was reported that maternal grandmother (MGM) watched Siblings and brought men into the home. The party also accused MGM of smoking methamphetamine in the house. Mother also brought men into the home to have sex for money. Mother believed that Father was the reporting party and that the accusations were false.

Father was living with PGM in Azusa. PGM cared for Minor and had done so since Minor was seven days old. Father denied he caused any injuries to Mother during the prior domestic violence incident. He admitted to using methamphetamine four days prior to the interview with the social worker. He denied using drugs when he was with Minor. PGM was able to care for Minor. PGM confirmed that Minor was living with her. Father tested positive for methamphetamine and marijuana.

3

Mother reported on March 2, 2023, that she had moved to Arizona to live with her grandmother. Children's services in Arizona was contacted. On March 7, 2023, Mother reported being back in Los Angeles and the LADCS determined it needed to detain Minor and Siblings. Mother then advised the LADCS that she was back in Arizona. She was advised that there was a removal order in place for Minor and Siblings. Mother reported that Siblings were with her in Arizona and she was in contact with the local children's services. Minor was placed with PGM and advised not to allow Father in the home with Minor.

On or about March 13, 2023, the LADCS filed a section 300 petition for Minor against parents. It was alleged under serious physical harm against parents under section 300, subdivision (a), that they engaged in violent altercations resulting in an arrest on one occasion. It further alleged under section 300, subdivision (b), failure to protect, that parents engaged in numerous violent altercations; and Father had a history of substance abuse which put Minor at risk of harm.

At the detention hearing, the juvenile court found a prima facie case for detaining Minor and Siblings. Father was named the presumed father of Minor. Minor had been living with PGM for almost one year. Minor was detained from parents and placed with PGM. The juvenile court ordered monitored visits for Mother with Minor three times each week.

B.     <u>JURISDICTION/DISPOSITION REPORT</u>

The jurisdiction/disposition report was filed on March 29, 2023. Minor was living with PGM. Mother had a criminal history of domestic battery and corporal injury to

spouse or cohabitant. Father also had arrests for domestic battery. Mother explained that Father had falsely accused her of hitting him and she was arrested in October 2022. Mother provided further information regarding the incident of violence that started the dependency case. She also provided information regarding other incidents of domestic violence between her and Father. She was depressed and wanted her children returned to her. Mother was no longer in a relationship with Father. Mother had not started any services. Mother suspected that Father was using drugs and he tested positive for methamphetamines. Father had not been interviewed during the reporting period. Minor was developing normally. The LADCS stated that it was creating a visitation schedule for Mother. The LADCS recommended that Minor be declared a dependent of the court and that Mother be granted reunification services. Mother was to participate in parenting and domestic violence classes. She was also to complete individual counseling.

A second amended petition was filed on April 3, 2023, and accepted by the juvenile court. The allegations in the second amended petition for Minor remained the same as the original petition. An additional allegation for one of Minor's siblings was added and is not relevant here.

An addendum report was filed on April 3, 2023. Mother provided additional information that she wanted to buy a house in Arizona and did not plan to be in a relationship with anyone. She would allow Father to visit weekly with Minor. Father was interviewed and admitted he and Mother had arguments and pushed each other. He denied they hit each other. He admitted using drugs but insisted he was not an addict.

He had not used any substances since the last drug test. Father was concerned that Mother had mental health issues. There were no reports of visits.

The jurisdiction/disposition hearing for Minor was conducted on April 3, 2023. At the contested hearing, Mother called the social worker who prepared the jurisdiction/disposition report. CFS was concerned that Mother and Father were still going to be in contact with each other and there was a potential for domestic violence. After the testimony, the juvenile court found the section 300, subdivision (a), and (b), allegations in the second amended petition true for Minor.[3] Minor was declared a dependent of the court and Mother was granted six months of reunification services. The juvenile court admonished parents that based on Minor's age, they were only entitled to six months of reunification services if they made no progress in their services.

C.     REVIEW HEARINGS

The six-month review hearing report was filed by the LADCS on September 25, 2023. Minor was still placed with PGM. Father had not met with the LADCS during the reporting period. On August 23, 2023, one of Minor's siblings disclosed he had been abused in the past by Father. It was also reported that Father "drank a lot" and used cocaine.

Mother had maintained consistent contact with the LADCS. She had been able to find a house in Victorville. Mother had participated in parenting classes and individual counseling. She completed the parenting class but decided to continue the classes

---

[3] The juvenile court struck some of the language in the second amended petition in regard to arrests for domestic violence.

because she enjoyed them and "gained a lot" from participating. She was also enrolled in a domestic violence program. Minor had a strong bond with PGM.

Mother had visits with Minor two times each week for two hours. Mother played with Minor. She indicated that Minor was "clingy" and cried when the visits ended. Mother missed three weeks of visits because she was sick, and she also missed visits because she did not have enough gas for her car. PGM reported the visits between Mother and Minor were appropriate. PGM complained that Mother did not always confirm visits and had missed visits. It was recommended that services be continued for Mother for Minor. It was also recommended the case be transferred to CFS since Mother was residing in Victorville.

The six month review hearing was held on October 2, 2023. The LADCS was asking that the case be transferred to CFS. There was no objection. The juvenile court found reasonable services had been provided to Mother and continued reunification services for six months. On November 6, 2023, the juvenile court granted the request to transfer the case to CFS. San Bernardino County acknowledged receipt of the case on November 14, 2023.

On December 4, 2023, the first hearing in San Bernardino County was held. The juvenile court continued the visitation schedule. Mother's counsel requested that she be granted visits at CFS's office and have visits monitored by someone other than PGM. She was experiencing problems with visitation with PGM supervising the visits. The juvenile court did not make any changes to visitation but did grant Mother's request for holiday visits. CFS was to submit a packet to the juvenile court within 45 days in regards

7

to whether Father had a case plan and address the visits between Mother and Minor. Notice was given that the 12-month review hearing would go forward on March 5, 2024.

A status review report was filed on March 4, 2024. It was recommended by CFS that Minor continue in out-of-home placement and parents receive six additional months of reunification services. Mother reported a maternal aunt was interested in placement of Minor. Father had not contacted CFS. Mother had housing, a full-time job, and transportation. Minor was developing normally. Minor was still placed with PGM, who was willing to provide permanent care. There were issues with visitation. PGM did not drive and could not bring Minor to visits at the CFS office. PGM was willing to have visits in her home or at a park. Mother stated she had completed individual counseling, domestic violence classes, and parenting classes. Certificates of completion were provided by Mother. CFS sought to have the juvenile court conclude that reasonable services had been given to Mother. There was a substantial probability that Minor would return home to Mother within the next six months.

At a hearing conducted on March 5, 2024, Mother requested a contested 12-month review hearing. Mother's counsel also requested that the juvenile court admonish PGM to cooperate with visits. PGM had not been returning Mother's calls and PGM was preventing visits between Mother and Minor. Mother's counsel was also requesting removal of Minor from PGM's home and that a maternal great-aunt be assessed for placement. The juvenile court gave CFS authority to change placement if it was deemed appropriate. The juvenile court also admonished PGM not to interfere with visits between Mother and Minor. PGM, who was in attendance, acknowledged the juvenile

court's orders. Mother filed a section 388 petition on March 5, 2024, seeking a new placement for Minor.

CFS filed a response to the section 388 petition. They opposed moving Minor from PGM's home. CFS provided that Mother's grandmother passed away and that Mother had been unable to attend visits between November 11, 2023, and mid-December due to handling the arrangements in Arizona. Mother went to PGM's house on Christmas Eve but was denied access by PGM. Mother wanted Minor to stay with PGM if PGM would follow the juvenile court's orders on visitation. Mother missed one visit in March 2024 due to a doctor's appointment and another visit due to not having enough gas. Mother was given a gas card on March 19, 2024. PGM claimed never to have been told about the scheduled visits for Mother. CFS stated it would not be in the best interests of Minor to move her from PGM's home. Visits with Mother had resumed.

On April 8, 2024, the juvenile court conducted a contested 12-month review hearing. CFS submitted on the March 5, 2024, review report and the interim review report dated April 8, 2024. Mother withdrew the section 388 petition because PGM had been complying with visits. Mother's counsel contested a finding of reasonable services based on three months of no visitation. Giselle Cruz was called to testify. She was a case manager from CFS assigned to handle the case involving Mother and Minor. Cruz was assigned to the case on March 5, 2024. Mother told Cruz that the visits were going "better than before." Cruz recommended that services be continued for Mother and that supervised visits continue due to inconsistencies in visitation during the month. Mother had to cancel visits due to car trouble and doctor appointments. She also did not have

9

enough gas but had been provided with gas cards on March 19, 2024. Since Cruz had been assigned to the case, there had been no issues with visitation. The current order was three visits each week for three hours each visit. She had no concerns if the juvenile court ordered unsupervised visits.

The juvenile court inquired of Cruz whether the only concern about returning Minor to Mother's care was that a bond needed to be developed before Minor felt safe with Mother full time. Cruz responded, "yes." The juvenile court then stated that it appeared a "transition plan" should be adopted. It was also recommended that Father be given additional services even though 12 months had already been given.

Agena Boucard also testified. She was the assigned case worker prior to Cruz. She could not recall when she was assigned to the case but thought it was the current year. Boucard received certificates of completion from Mother of her completed services from Mother. No update packet on the case was submitted to the juvenile court once the case was transferred from the LADCS. Boucard was aware that PGM was not complying with the visitation order. Boucard believed that Mother complained between four and seven times about visitation. Boucard asked Mother if she wanted another family member to take Minor but Mother declined. No visits occurred while Boucard was handling the case because PGM would not cooperate, Mother did not have a vehicle and there were conflicts with Mother's work schedule. In her opinion, PGM was interfering with reunification services.

After Boucard's testimony, the juvenile court stated "You're asking for reasonable services. I'm giving you a tentative." The juvenile court stated that it did not like that

10

there was no updated packet but that this commonly happened on cases transferred from the LADCS. The juvenile court then stated, "The worker dealt with the issue of replacement and visits with Grandmother. It doesn't rise to the level of reasonable efforts or violation thereof. It's clunky just because of the transfer." It blamed the LADCS for not properly handling the case. The juvenile court asked about the transition plan. CFS stated that it planned to supervise one visit and then schedule unsupervised visits one time per week for four hours. They planned to work with Mother, who was also asking for overnight and weekend visits.

The juvenile court then proposed that it could rule on the reasonable services issues and continue the 12-month review hearing for 45 days to see "what Mom's going to do." The remainder of the hearing would not be contested. Mother's counsel agreed but objected to any reduction in visits. Mother was currently having three visits a week for three hours each visit. Mother's counsel objected to one visit for four hours each week. The juvenile court agreed that it would not decrease visitation. The juvenile court then requested argument on the reasonable services.

Mother's counsel argued that Mother had not had visits since November 8, 2023. She also told a social worker that she had no visits in October and November. The juvenile court noted that the case was not transferred until December. Mother's counsel also argued that since December, she did not have visits. She had missed approximately 60 visits. Counsel did acknowledge that Mother was unable to visit Minor in December based on her own grandmother passing away in Arizona. When she completed the funeral arrangements, she tried to visit Minor the day after Christmas. PGM did not

11

allow her to visit with Minor. From January until the prior court hearing, Mother had no visits with Minor. PGM was not working with CFS to facilitate visits. After the last court hearing, visits had been consistent. Only eight visits were missed during this time period due to Mother dealing with the loss of her grandmother and other commitments. Mother's counsel argued that reasonable services was not just completing classes. It also involved giving parents tools to complete their case plans, which included visits.

The juvenile court noted that CFS tried to remedy the issue by having Minor placed with a different relative, but Mother decided she did not want Minor moved. CFS recognized the issue and tried to remedy visits. Mother's counsel did not think that CFS did enough when contacted by Mother that visits were not occurring. Mother missed time to bond with Minor. She completed her classes but could not have custody of Minor because of the lack of a bond. If visits had occurred, she would be currently having overnight and weekend visits. Father and Minor's counsel joined in the argument about unreasonable services.

The juvenile court found that services were reasonable by clear and convincing evidence. The juvenile court found the testimony of the social workers was credible. The juvenile court concluded, "Mother has her own contributing factors, which were legitimate; that [CFS] did what they could to overcome with their resources, and it was a perfect storm of lapse in traction for this family; however, there was equal parts responsibility, if you will, so its not on all fours it was all on [CFS]. The Court does find reasonable services." The matter was continued to May 16, 2024.

On April 8, 2024, Mother's counsel filed a notice of appeal on behalf of Mother. The appeal was from the juvenile court's finding of reasonable services for Mother.

CFS has requested this court to augment the record with a further report filed by the CFS on May 3, 2024, and the May 16, 2024, minute order, which was the continued 12-month review hearing. Since the ruling on May 16, 2024, could have an impact on the resolution of whether the appeal should be dismissed, we will grant that request to augment the record with the minute order only. (See *In re N.S.* (2016) 245 Cal.App.4th 53, 58 [dependency counsel have a duty to bring to the appellate court's attention post-appellate rulings by the juvenile court that affect whether the appellate court can or should proceed to the merits].)

According to the minute order from the hearing on May 16, 2024, the juvenile court found that reasonable services had been provided to parents. The juvenile court also noted that there was a substantial probability that Minor would be returned to Mother in the next six months. The juvenile court ordered an additional six months of reunification services. Mother was granted unsupervised visits three times each week for four hours. The juvenile court also ordered overnight and weekend visits.

## DISCUSSION

Mother contends the juvenile court erred when it found that CFS provided reasonable services to her at the 12-month review hearing based on her not receiving visitation for at least three months. She seeks an order from this court reversing the juvenile court's order and instructing the juvenile court to provide her with six additional

13

months of reunification services. CFS insists that the appeal must be dismissed as the finding at the April 8, 2024, hearing on reasonable services was not an appealable order.

A.     APPEALABILITY

"[T]he scope of a party's right to appeal is completely a creature of statute." (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 666.) Section 395, subdivision (a)(1), provides, in pertinent part, "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." "As a result of these broad statutory terms, '[j]uvenile dependency law does not abide by the normal prohibition against interlocutory appeals.' [Citations.] The dispositional order is the 'judgment' referred to in section 395, and all subsequent orders are appealable. [Citation.] ' "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." ' ." (*In re S.B.* (2009) 46 Cal.4th 529, 531-532 (*S.B.*).)

CFS insists that the appeal was filed prematurely and must be dismissed. CFS claims there was no appealable order made at the hearing on April 8, 2024. The 12-month review hearing was continued to May 16, 2024, where the juvenile court continued reunification services for six months. This appeal was from an interim finding that reasonable services had been granted to Mother regarding visitation with Minor. CFS insists that a challenge to the reasonable services finding requires the juvenile court to have made an underlying appealable order. At the time that the appeal was filed, the 12-month review hearing had not concluded. Initially, the juvenile court made a

14

definitive finding on the reasonableness of services at the hearing on April 8, 2024. It was not going to change its ruling at the continued hearing. Accordingly, the juvenile court made additional findings at the continued hearing but confirmed the prior finding that Mother was afforded reasonable services. While the better practice would have been for Mother to appeal after the 12-month review hearing had been completed, it does not warrant dismissal of the appeal in this case. It would be futile to dismiss the case and have Mother file an appeal from the May 16, 2024, hearing where it simply upheld the finding that reasonable services had been provided to Mother. }

CFS claims that the appeal should be dismissed because it is not justiciable. CFS argues that the issue is moot based on the juvenile court granting an additional six months of reunification services at the 12-month review hearing conducted on May 16, 2024. CFS insists that this court can provide no relief to Mother. CFS insists that this case does not warrant reviewing the merits of the findings on reasonable services.

"When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) The remedy for the children's services department's failure to provide reasonable services to a parent is for the parent to receive additional reunification services. (§ 366.21, subd. (g)(1).) Here, Mother was afforded six months additional reunification services after the finding of reasonable services at the 12-month review hearing. As such, it appears Mother already received the appropriate remedy. However, several appellate courts have reviewed the finding on reasonable services despite the grant of additional reunification services based on the possibility of negative consequences at subsequent hearings.

15

In *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147 (*Melinda K.*), the mother had been granted six months of reunification services, and at the six-month review hearing, the children's services department reported she had been consistent in visitation and completed her classes. However, the child had not participated in the ordered counseling. (*Id.* at pp. 1150-1151.) At the six-month review hearing, the juvenile court found that although the children's services department had been slow in obtaining counseling for the minor, it had finally got counseling in place. The juvenile court continued reunification services for six months and ordered liberalized visitation. (*Id.* at p. 1152.) The mother filed an appeal from the order finding that the children's services department provided reasonable reunification services, and the children's services department moved to dismiss the appeal. (*Ibid.*)

The appellate court in *Melinda K.* noted that, "The question before us is whether section 395 authorizes an appeal of a 'finding' contained within an order after judgment. We conclude that the language of section 395, which authorizes an appeal from an 'order' after judgment, does not authorize an appeal from the isolated finding in this case that reasonable reunification services had been provided." (*Melinda K.*, *supra*, 116 Cal.App.4th at p. 1153.) The appellate court found, "[w]hen the juvenile court makes a finding that reasonable services were provided, a parent or legal guardian may not be immediately impacted by that finding. Here, for example, mother was not aggrieved by the finding that reasonable reunification services were provided, given that services were continued for at least another six months and no negative consequence flowed from the reasonable services finding. We do not believe that section 395 permits a party to appeal

16

a finding in the absence of an adverse order resulting from that finding. Accordingly, we conclude that there is no right to appeal a finding that reasonable reunification services were provided to the parent or legal guardian unless the court takes adverse action based on that finding, because, in the absence of such action, there is no appealable order resulting from that finding." (*Id.* at pp. 1153-1154.) However, the appellate court found that this left the mother no way to raise the issue. As such, it found "[W]e decline to leave mother without any means by which to challenge the juvenile court's finding. We therefore hold that a petition for writ of mandate is the appropriate method by which to challenge a finding made by a juvenile court at a review hearing which does not result in an appealable order. In this way, a parent or legal guardian will be afforded meaningful appellate review of a finding which may ultimately have a significant effect on the dependency proceedings. Moreover, sequential appeals and their accompanying delays will be avoided." (*Id.* at p. 1157.)

Following *Melinda K.*, the California Supreme Court decided *S.B.*, *supra*, 46 Cal.4th 529. The issue in *S.B.* was whether a finding under section 366.26, subdivision (c)(3), which authorizes the juvenile court to find that adoption of a child is probable but difficult and allows the children's services department 180 days to find an adoptive family, was an appealable order under section 395. (*Id.* at p. 531.) The court of appeal dismissed the appeal: "It was not persuaded by her reliance on the general rule of appealability provided in section 395, reasoning that she was challenging only the finding that her children were probably adoptable." The California Supreme Court found this was error. It first noted that, " ' "A consequence of section 395 is that an unappealed

17

disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." ' " (*Id.* at p. 532.) The court also noted that "It is true that 'one does not appeal from a finding; one appeals from a judgment or from an order that the Legislature has designated as appealable.' [Citation.] [R]eview of findings is normally obtained by appeal from the ensuing judgment or order." (*Id.* at p. 534.) It found that the mother had appealed from the " 'order that efforts be made to locate an appropriate adoptive family.' " (*Ibid.*) It concluded that the "interests of parents and children are substantially affected by a section 366.26, subdivision (c)(3) order" and was appealable. (*Id.* at p. 537.)

Following *S.B.*, this Division decided *In re T.G.* (2010) 188 Cal.App.4th 687 (*T.G.*). In that case, the father appealed the juvenile court's findings at the six-month review hearing that reasonable services were provided to him between the time of the disposition hearing and the six-month review hearing. (*Id.* at p. 690.) The father was incarcerated in April 2009, and at the six-month review hearing held in October 2009 complained he had not received reasonable services because he had no visitation since April 2009. The juvenile court found family reunification services to the father should be continued. The juvenile court ordered that the father be given telephonic visits. (*Id.* at p. 691.)

On appeal in *T.G.*, the Riverside County Department of Public Social Services (DPSS) argued that the juvenile court's reasonable services finding was not appealable because the father only challenged this finding in isolation and could not show he was aggrieved by the six-month review order as the juvenile court did not take any adverse

18

action against him based on the court continuing his reunification services for six months. DPSS further asked that the court not treat the appeal as a petition for writ of mandate. (*T.G.*, *supra*, 188 Cal.App.4th at p. 691.) The father responded that the order was appealable because orders after disposition are generally appealable, and the reasonable services finding was adverse to his parental interests because it placed an "obstacle in his path to reunifying with his children and complicated his ability to obtain appellate relief." (*Id.* at pp. 691-692.)

This Division found on appeal that "[A] parent or child can be aggrieved by a reasonable services finding at the time of the six-month review hearing if it is not supported by substantial evidence. Such a finding can put the interests of parents and children in reunification at a significant procedural disadvantage. First, reunification services are generally limited to 12 months for a child over the age of three years. [Citation.] At the time of the 12-month review hearing, the juvenile court can only return a child to parental custody if it finds that return would not create a substantial risk of detriment to the physical safety or emotional well-being of the child." (*T.G.*, *supra*, 188 Cal.App.4th at p. 695.) The court also noted that "[A] parent whose services are terminated at the 12-month review period based in part on an erroneous finding of reasonable services during the first six months of reunification, would be unable to challenge that finding by way of an appeal from a subsequent adverse order at the time of the 12-month review hearing." (*Id.* at pp. 695-696.) The court concluded, "Based on the foregoing, we agree with [the f]ather's contention that the reasonable services finding contained within the order made at the six-month review hearing is adverse to his

19

parental interest in reunification.  The finding and order made at the six-month review hearing is therefore appealable under section 395.  As a result, we can consider the merits of the juvenile court's reasonable services finding without the need to treat Father's appeal as a petition for discretionary writ relief." (*Id.* at p. 696.)

Mother insists that the finding that reasonable services were given to her at the 12-month review hearing could have an impact on a potential future hearing terminating parental rights pursuant to section 366.26.  A finding of reasonable services is required in order to set a hearing pursuant to section 366.26. (§ 366.21, subd. (e)(8).)  The juvenile court's findings in the future—such as whether there is a bond between Mother and Minor at a section 366.26 hearing—could be impacted by the finding at the 12-month review hearing.  CFS insists this case differs from *Melinda K.* and *T.G.*, as both cases involved a reasonable services finding at the time of the six-month review hearing.  As such, since Mother was only entitled to six months of reunification services since Minor was under the age of 3, and now has been given 18-months of reunification services, there is no possibility that she would be denied reunification services to which she was entitled, and it would have no impact on future hearings.  In fact, CFS contends Mother will receive a total of 12 months of reasonable services even if there was six months that she did not receive reasonable services.  CFS insists that Mother was not aggrieved and there was no significant impact on the dependency proceedings.

We agree with Mother that there is a potential for the finding at the 12-month review hearing that reasonable services were provided to impact her ability to reunify with Minor should a section 366.26 hearing be ordered at the 18-month review hearing. As this Division found in *T.G.*, the finding of reasonable services is appealable.

B.      MERITS

We find substantial evidence supports the juvenile court's finding that CFS provided reasonable services to Mother.

A children's services department must make a " 'good faith effort' to provide reasonable services responding to the unique needs of each family." (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.) "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) "Visitation is an essential component of any reunification plan. [Citation.] To promote reunification, visitation must be as frequent as possible." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.) If obstacles to visitation arise, "*Some* effort must be made to overcome obstacles to the provision of reunification services." (*Id.* at p. 973.) However, "[r]eunification services need not be perfect." (*Id.* at p. 972.)

The juvenile court's reasonable services finding "must be made [by] clear and convincing evidence" and "we review it for substantial evidence." (*In re Alvin R.*, *supra,* 108 Cal.App.4th at p. 971.) "When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing evidence, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of fact." (*Ibid.*)

Here, Mother admitted that part of the time during the three months—from November 11, 2023, until mid-December—the missed visits with Minor were due to Mother having to attend to her grandmother's funeral in Arizona. In addition, she contacted CFS and they suggested that Minor's caregiver be changed in order to facilitate visitation with Minor. CFS did not ignore Mother's complaints about visitation. Mother only contacted CFS four to seven times during the three months, and they tried to contact PGM several times to comply with visitation. When that was unsuccessful, they recommended Minor's placement change to a different relative, but Mother did not want Minor moved. Mother later reported that visits after March 5, 2024, were going fine and she had no complaints. While not perfect, CFS made efforts to ensure that Mother had visitation with Minor. Substantial evidence supports the juvenile court's finding that CFS provided reasonable services.

# DISPOSITION

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.